IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| BOBBY THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-05089-CV-DGK-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING COMMISIONER'S DECISION**

Plaintiff Bobby Thomas seeks judicial review of the Commissioner's denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42. U.S.C. § 401, *et seq.*, and his application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has exhausted all administrative remedies, and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

Thomas alleges he became disabled as of November 1, 2001. After independent review of the record as a whole, the Court finds the Commissioner's decision denying disability and SSI benefits is supported by substantial evidence. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

**Standard of Review**

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are consistent

1

with the Social Security Act, the relevant case law, and the regulations, and whether they are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* In making this determination, the court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Id.* If substantial evidence in the record supports the Commissioner's decision, the court may not reverse because substantial evidence in the records supports a contrary result or because the court may have decided the case differently. *Id.*

## Discussion

To establish entitlement to benefits, Plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of no less than 12 months. 42 U.S.C. §§ 423(d) and 1382(a)(3)(A). To determine a claimant's eligibility for SSI, the Commissioner employs a five-step evaluation process.[1] *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a).

In this case, the administrative law judge ("ALJ") found that despite Plaintiff's severe impairments, Plaintiff's allegations of disabling limitations were not supported by the evidence

---

[1] There is a five-step process for determining eligibility. If the fact-finder determines at any step of the evaluation process that the claimant is or is not disabled, the inquiry does not continue. The applicant bears the burden of showing he is disabled from steps one through four of the process. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). At step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *Id.* The steps proceed as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, the applicant is not disabled; if not, the inquiry continues. At step two, the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments that has lasted or is expected to last for a continuous 12-month period. If not, the applicant is not disabled; if so, the inquiry continues. At step three, the Commissioner considers whether the impairment or combination of impairments meets the criteria of any impairment listed in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four, the Commissioner considers if the applicant's residual functional capacity allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five, the Commissioner considers whether, in light of the applicant's residual functional capacity, age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King*, 564 F.3d at 979 n.2.

and that Plaintiff retained the residual functional capacity ("RFC") to understand, remember, carry out complex instructions, and have occasional interaction with others. Plaintiff argues that: (1) the ALJ failed to properly derive his RFC, failing to indicate what medical or opinion evidence he relied upon in making his determination; and (2) the ALJ failed to provide a proper credibility analysis.

### A. The ALJ Properly Assessed Plaintiff's RFC.

The ALJ found that Plaintiff suffered from the following severe impairments: affective disorder, attention deficit hyperactivity disorder (ADHD), personality disorder not otherwise specified, and a history of polysubstance dependence. R. at 12. Despite these impairments, the ALJ determined that Plaintiff could understand, remember, carry out complex instructions, and have occasional interaction with others. The Court finds this determination supported by substantial evidence of record.

Plaintiff asserts that the ALJ's RFC finding is not supported by medical evidence and that the ALJ failed to provide a "reasonable narrative discussion as to how the medical evidence supports his arbitrary conclusions" (Doc. 7). An ALJ must base his RFC determination on all evidence of record. *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Although an RFC is a medical determination, in making this determination the ALJ must rely not only on medical evidence but on all relevant, credible evidence. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

Here, the medical evidence supports the ALJ's determination, and the ALJ thoroughly considered and discussed this evidence in rendering his decision. For instance, the ALJ summarized the evidence supporting Plaintiff's severe impairments and discussed the inconsistencies between Plaintiff's testimony and treatment notes. The ALJ noted that one

3

treatment provider reported that the claimant's presentation was the "opposite" of his reported symptoms. R. at 16. The ALJ also noted that the "claimant's treatment for his mental impairments has been largely conservative, with little consistent therapy and prescription medications." *Id.* In addition, the ALJ devoted significant time to discussing statements of doctors reporting that Plaintiff does not follow their treatment recommendations.

Overall, the ALJ's determination is both fully supported and sufficiently explained. Accordingly, the Court upholds the ALJ's determination of Plaintiff's RFC, finding that the ALJ's determination was based on substantial evidence of record and properly included only Plaintiff's credible limitations. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010).

**B. The ALJ Properly Assessed Plaintiff's Credibility.**

Plaintiff also asserts that the ALJ did not properly evaluate his credibility, failing to consider the factors set forth in the Social Security regulations and *Polaski v. Heckler.* 739 F.2d 1320 (8th Cir. 1984). Particularly, Plaintiff argues that the ALJ discounted his testimony regarding his mental limitations based upon his history of working for short periods of time during the period of alleged disability. Plaintiff also contests the ALJ's determination that his "activities of daily living [are] inconsistent with his allegations of total debilitation" (Doc. 7).

The ALJ's credibility finding must be affirmed if it is supported by substantial evidence on the record as a whole. When assessing a claimant's credibility, "the ALJ must look to the claimant's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions." *Finch v. Astrue,* 547 F.3d 933, 935 (8th Cir. 2008) (citing *Polaski*, 739 F.2d at 1322). Credibility determinations are generally the province of the ALJ, and courts will defer to

4

an ALJ's explicit credibility determination when it is supported by "a good reason." *Finch*, 547 F.3d at 935.

In discounting Plaintiff's credibility, the ALJ relied on the inconsistencies between Plaintiff's assertions and the substantial evidence of record. For example, although Plaintiff asserted that he was unable to work due to his impairments, the ALJ properly considered that Plaintiff held several jobs and engaged in substantial gainful activity during his alleged period of disability. R. at 11. Plaintiff argues that this work should not disqualify him for disability because he was forced to quit these jobs due to his impairments. Not all work attempts constitute "substantial gainful activity" such that they disqualify a plaintiff for disability benefits. Unsuccessful work attempts, for example, occur when a claimant is forced to stop or reduce his work after a short time due to an impairment and do not necessarily negate an individual's claim for disability. 20 C.F.R. § 404.1574(a)(1). However, "[w]ork lasting more than six months cannot be considered an unsuccessful work attempt." *King v. Chater,* 72 F.3d 85, 87 (8th Cir.1995); *Nettles v. Sullivan,* 956 F.2d 820, 822-23 (8th Cir.1992). In addition, when a claimant works at substantial gainful activity levels for more than six months, this is generally evidence that a person is not disabled. 20 C.F.R. §§ 404.1574(a)(1) and 416.974(a)(1).

Here, the ALJ properly acknowledged two of Plaintiff's "unsuccessful work attempts," occurring in April and May of 2007 and lasting for less than two months. R. at 11. However, the ALJ also properly considered Plaintiff's gainful employment from March 25, 2008 through October 11, 2008 and April 2005 through October 2006. R. at 11, 157-61, 228. Plaintiff's ability to hold gainful employment was supported by statements from Plaintiff's prior employer, Integrity EMS of Oklahoma, LLC, ("Integrity") which the ALJ properly considered. Integrity indicated that contrary to Plaintiff's testimony, he reported for work as scheduled, was able to

5

complete the usual duties required of his position without special assistances, and on average, completed these duties in the same amount of time as other employees. R. at 16-17, 35, 47-48, 228-29. Notably, this performance occurred during a time period when Plaintiff was not regularly taking his medications. R. at 228, 356, 368.

In evaluating his credibility, the ALJ also questioned the reason behind Plaintiff's loss of employment. For example, Plaintiff asserted that his jobs "invariably end[] in an involuntary termination due to his mental impairments." R. at 13. However, other evidence suggests otherwise. On one occasion, Plaintiff reported leaving a job to take a position that was closer to home and had better pay. Plaintiff's Counsel, Ms. Siddoway, noted that Plaintiff lost several jobs because "[he] doesn't follow rules." R. at 417, 469, 566. Plaintiff was reportedly terminated from a number of jobs because of absences and tardiness. R. at 382, 467, 517, 532. Finally, the ALJ properly considered that Plaintiff applied for jobs and received unemployment benefits during his period of alleged disability, thereby evidencing that he holds himself out as available, willing, and able to work. *See Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998).

The ALJ also properly considered Plaintiff's "largely conservative" treatment history, "with little consistent therapy and prescription medications." R. at 16. In fact, when Plaintiff was compliant with his medications, his symptoms were well-controlled. On September 20, 2001 and November 27, 2001, for example, Dr. Peprah noted that Plaintiff was "doing well" and that his Adderall prescription "made a lot of difference." R. at 474, 476. Again in June 2003, Plaintiff told Dr. Swartz that he was feeling better and accomplishing more with Adderall. R. at 511-12. In September 2003, Dr. Knowlton noted that Plaintiff was "functioning well and seem[ed] to be doing satisfactory." R. at 425.

6

Despite the benefits of his medication, Plaintiff was also frequently noncompliant with his medical regime. This was another factor the ALJ properly considered. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("failure to follow a recommended course of treatment also weighs against a claimant's credibility"). For example, Dr. Singleton noted that Plaintiff "basically does what he wants to do with the medicines and takes them on his own terms." R. at 277. Similarly, Dr. Wang reported that Plaintiff "abuses Adderall and takes it irregularly." R. at 307.

Given the inconsistencies between Plaintiff's accounts of disabling impairments and the record evidence as a whole, the Court must uphold the ALJ's credibility assessment.

## Conclusion

After careful examination of the record as a whole, the Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  November 30, 2011           /s/ Greg Kays
                                   GREG KAYS, JUDGE
                                   UNITED STATES DISTRICT COURT